# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN DOES, | Nos. 11-17827, 11-17830, 11-17834 |
|       Plaintiffs – Appellants, | |
| v. | |
| SECURITIES AND EXCHANGE COMMISSION, | |
|       Defendant – Appellee. | |

### APPEAL FROM THE UNITED STATES COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AT SAN FRANCISCO

(Hon. Charles R. Breyer)

D.C. No. 3:11-mc-80208-CRB
D.C. No. 3:11-mc-80184-CRB
D.C. No. 3:11-mc-80209-CRB

## CONSOLIDATED REPLY BRIEF OF DOE APPELLANTS

**Newman Du Wors LLP**
By:    Keith Scully
       Derek Newman
       1201 Third Avenue, Suite 1600
       Seattle, Washington 98101
       Telephone:  (206) 274-2800
       Facsimile:   (206) 274-2801

       Attorney for Appellants John Doe

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT................................................................................. 2

      A.    The SEC's subpoena infringes Doe's first-amendment anonymous-
            speech right. ........................................................................ 2

      B.    The SEC has not demonstrated a compelling governmental interest
            in Doe's identity because it has identified only possible wrongdoing. . 4

      C.    Doe's proposed rule strikes the appropriate balance between the
            government's need to investigate and civil rights. ............................... 9

      D.    The SEC provided insufficient evidence to justify an intrusion into
            Doe's first-amendment rights........................................................... 10

      E.    The burden is on the SEC, not the District Court, to create a record
            supporting its intrusion..................................................................... 12

      F.    This Court should order exclusion of evidence as a remedy................13

III.  CONCLUSION ............................................................................15

i

# TABLE OF AUTHORITIES

## CASES

*Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*,
    661 F.3d 1168 (9th Cir. 2011) ................................................................ 9

*Brock v. Local 375*,
    860 F.2d 346 (9th Cir. 1988) ........................................ 2, 4, 8, 9, 12, 14

*Davis v. United States,*
    131 S. Ct. 2419 (2011) ........................................................................ 13

*EEOC v. Shell Oil Co.*,
    466 U.S. 54 (1984) ................................................................................ 5

*Federal Election Com. v. La Rouche Campaign*,
    817 F.2d 233 (2d Cir. 1987) .................................................. 4, 7, 8, 9, 12

*Fortney v. United States*,
    59 F.3d 117 (9th Cir. 1995) ............................................................ 11, 12

*FTC v. Gibson Products of San Antonio, Inc.*,
    569 F.2d 900 (5th Cir.1978) ................................................................ 13

*Gibson v. Fla. Legislative Investigation Comm.*,
    372 U.S. 539 (1963) .............................................................. 2, 4, 7, 12

*Illinois v. Krull,*
    480 U.S. 340 (1987) ............................................................................ 14

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) .............................................................................. 2

*Reno v. ACLU,*
    521 U.S. 844 (1997) ................................................................. 14

*SEC v. Jerry T. O'Brien, Inc.,*
    467 U.S. 735 (1984) ................................................................... 5

*Talley v. California,*
    362 U.S. 60 (1960) ................................................................ 2, 3

*United States v. Alvarado-Torres,*
    45 F. Supp. 2d 986 (S.D. Cal. 1999) ...................................... 13

*United States v. Comley,*
    890 F.2d 539 (1st Cir.1989) ............................................ 5, 9, 12

*United States v. Leon,*
    468 U.S. 897 (1984) ................................................................ 14

*United States v. Powell,*
    379 U.S. 48 (1964) ................................................................... 5

# STATUTES, RULES, AND SECONDARY AUTHORITIES

## STATUTES

15 U.S.C. § 77s(c) ................................................................................ 6

15 U.S.C. § 78u(a) ............................................................................... 6

15 U.S.C. § 78u(b) .............................................................................. 6

# I.    INTRODUCTION

The SEC has broad power to investigate securities violations. But it cannot infringe the first-amendment right to anonymous speech in connection with an investigation unless it can show a compelling government interest requiring the anonymous speaker's identity. The SEC attempts to circumvent its obligation to identify a compelling interest in Doe's identity by citing its general interest in investigating possible securities law violations.

The SEC claims that it is investigating a "pump and dump" scheme. In a pump-and-dump, there can be no legal violation without a failure to disclose material information or a false or misleading statement relating to a stock. In order to determine whether information is omitted or a statement is false or misleading, the SEC needs the statement and then can investigate its completeness and truthfulness. The SEC has the statement, but has presented no evidence that there has been a legal violation—in fact, the SEC admits that it does not yet know if a securities law has been violated. And the SEC has not identified a reason why Doe's identity bears on whether the statement at issue was incomplete, false, or misleading.

Instead, the SEC asks this Court to disregard the Supreme Court's determination that anonymous speech is itself a constitutional right. The agency seeks to invade Doe's anonymity based on the mere possibility that a law might have been broken—without identifying how Doe's identity can assist the investigation. Until the SEC can identify a compelling interest in Doe's identity in particular—as opposed to its interest in the investigation generally—its subpoena is invalid.  This Court should reaffirm its previous

holdings and require the SEC to present more than mere speculation before intruding into Doe's protected right to remain anonymous.

## II.   ARGUMENT

### A.   The SEC's subpoena infringes Doe's first-amendment anonymous-speech right.

In order to shift the burden to the government to show a compelling government interest in his identity, Doe need only present a "prima facie showing of arguable first amendment infringement".  *Brock v. Local 375*, 860 F.2d 346, 349-50 (9th Cir. 1988). Doe testified that he sought anonymity in order to express protected speech and established that the subpoena would expose his identity. (ER 103.) So the trial court correctly found that Doe established infringement of a first amendment right. (ER 13-14.).

The SEC argues that Doe must show further "chilling" of his anonymity. (Response at 9-13.) But the Supreme Court held that anonymity "is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *see also Talley v. California*, 362 U.S. 60 (1960). Doe has a right to anonymous speech—not just speech itself. If his anonymity is lost through the SEC's subpoena, his right is gone.

The SEC relies on cases discussing the right to associate, rather than the right to anonymous free speech. But the standard for when the right to associate is infringed is different than the standard for anonymous speech. The person resisting intrusion in the association right has a burden to demonstrate that chilling will occur. *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 (9th Cir. 2010). The party asserting an associational right must prove that the challenged government action would result in: (1) harassment,

2

membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* But the Supreme Court has not required the same standard for a person who wishes to maintain anonymous speech. Instead, the Court has found as a matter of law that breaching anonymity "would tend to restrict freedom to distribute information and thereby freedom of expression." *Talley,* 362 U.S. at 64.

In truth, Doe cannot provide additional information. Unlike an associational right—where the association can present evidence from members that they may not associate with the group without anonymity— Doe can only speak for himself. Doe identified his desire to protect his privacy and testified that he "made political statements under the belief that [his] anonymity w[ould] be protected." (ER 103). What other proof could he present?

Finally, the SEC claims that Doe should have no fear of intrusion because only the government, and not the public, would have access to his identity. (Response at 13.) But it is anonymity from the government that is the protected concern. *See Talley*, 362 U.S. at 64. Allowing the government to intrude upon citizens expressing criticism is one of the key weapons of oppression. *Id.* The District Court correctly found that Doe established a protected right and that the SEC's subpoena would intrude. Now the burden shifts to the government to prove a compelling government interest in Doe's identity. *Brock*, 860 F.2d at 349-50.

**B.     The SEC has not demonstrated a compelling governmental interest in Doe's identity because it has identified only possible wrongdoing.**

The SEC argues that it can invade constitutionally protected areas any time it is investigating securities fraud because "investigating potential wrongdoing is a compelling governmental interest." (Response, at 8.) The SEC misses the issue. The question before this Court is not whether the SEC has a right to investigate. Rather, the issue is whether the SEC can invade Doe's constitutional right before it proves that Doe's identity is necessary for the investigation.

The SEC may issue a subpoena if it proves that Congress has granted it the authority to investigate, it follows procedural requirements, and it can prove that the information is relevant and material to the type of investigation the SEC has undertaken. *Brock*, 860 F.2d at 348-349. But as the Supreme Court recognizes, "validation of the broad subject matter under investigation does not necessarily carry with it automatic and wholesale validation of all individual questions, subpoenas, and documentary demands." *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 545 (1963)(refusing to approve legislative subpoenas inquiring into communist infiltration even though investigation of communism was a legitimate government purpose). If the SEC seeks to intrude into Doe's first-amendment rights, it must also demonstrate a compelling governmental interest in Doe's identity. *See Brock,* 860 F.2d at 348-349; *see also Federal Election Com. v. La Rouche Campaign*, 817 F.2d 233, 234 (2d Cir. 1987)(holding that "different considerations come into play when a case, as here, implicates first amendment concerns.")

4

The SEC cites authority that is not relevant to this case because it concerns the agency's right to investigate Jammin Java for potential securities violations, which Doe does not dispute.[1] But the SEC provides no new authority addressing the quantum of proof required to demonstrate a compelling governmental interest sufficient to overcome first amendment protections. And no appellate decision has ever sanctioned a fishing expedition on the mere supposition that wrongdoing might be occurring.

For example, the SEC analogizes to *United States v. Comley*, 890 F.2d 539 (1ˢᵗ Cir.1989), claiming that the First Circuit approved a subpoena similar to the SEC's in the name of nuclear safety. (Response at 14.) But in *Comley,* an Administrative Law Judge reviewed testimony from a nuclear-facility employee that another employee revealed confidential information to a private citizen. The agency in *Comley* also introduced tape recordings of conversations between the alleged wrongdoer and the citizen. Only after this review did the court uphold an administrative subpoena seeking the remainder of the tape recordings. *Comley* simply does not stand for the proposition that the talisman of nuclear safety—an arguably far more compelling governmental interest than securities regulation—allows unrestricted fishing in protected information. Rather, *Comley* allowed the nuclear regulatory agency to obtain protected tapes *only after* proving that disclosure violations occurred. Doe asks for the same protection here. Like in

---

[1] The inapposite authority includes 15 U.S.C. § 78u(a),(b); 15 U.S.C. § 77s(c)(Response at 14-15); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743, 749 (1984) (Response at 15); *United States v. Powell*, 379 U.S. 48, 57 (1964); and *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984)(Response at 21).

5

*Comely*, this Court should only allow the subpoena if the agency establishes that legal violations occurred.

In *Gibson*, 372 U.S. at 546, the Court quashed legislative subpoenas seeking access to NAACP records in order to search for communist infiltration. The Court acknowledged that the pursuit of communists was a legitimate government objective, but held that a subpoena seeking the NAACP's membership lists was supported by insufficient evidence. The Court rejected evidence including testimony from an investigator that 14 known communists were members, or had participated in meetings, of the NAACP and that one known communist made a financial contribution. *Id.* at 551-52. The Court noted that the declarations failed to prove the key element sought: that communists infiltrated the NAACP rather than simply attended meetings. *Id.* Absent proof of an actual law violation, there was no nexus between the NAACP's records and illegal communist infiltration. This Court should follow. The SEC should not be able to obtain Doe's identity without first showing a nexus between his identity and an actual securities violation.

The SEC attempts to distinguish *Gibson* by claiming that the "Court's decision not to enforce the subpoena was not based on the quantum of evidence proffered, but on the fact that the evidence did not demonstrate the necessary connection between the N.A.A.C.P. and Communist activities." (Response, at 24.) But the Court's decision *was* based on the quantum of evidence proffered (nothing more than speculation), and the subpoena was quashed because that evidence did not demonstrate the necessary connection. *Gibson,* 372 U.S. at 552-53. The identical problem is present here. Even though preventing securities fraud, like deterring communism, is

a legitimate governmental objective, the evidence presented by the SEC does not demonstrate *any* unlawful activity and thus cannot demonstrate any connection between Doe and a violation of law. Further, even if the SEC demonstrated that unlawful activity occurred, the SEC does not particularize anything more than that Doe's gmail address might belong to a "tout." The SEC could have, but did not, produce Doe's alleged communications and allowed the District Court to evaluate them for potential violations of the securities laws rather than lumping Doe into an alleged "scheme" without explaining what the SEC believes he did.

The SEC next asserts that *Gibson* does not apply because "the two situations are entirely different" without explaining how. (Response at 24.) While *Gibson* involved a legislative inquiry into communism and this inquiry involves an SEC inquiry into securities fraud, those are distinctions without a difference. Each case involves government-issued administrative subpoenas as part of an investigation into potential law breaking.

In *La Rouche*, 817 F.2d 233, the Federal Elections Commission asserted that the LaRouche campaign falsified donation records, and sought the identity of both the persons who made the allegedly false donations and the persons who solicited them. The 2nd Circuit did not question the FEC's evidence that a fraud occurred, but allowed access to only the donors but not the solicitors. In its attempt to distinguish *La Rouche*, the SEC conclusorily asserts that "[n]othing in the opinion suggests that the FEC needed to do anything more than the SEC has done here[.]" (Response, at 25.) But the *LaRouche* court prevented the FEC from obtaining the identity of solicitors because the FEC did not demonstrate that they were involved in illegal activity. Doe asks for the same treatment.

7

Here, the SEC is investigating a "pump-and-dump" scheme. It admits it does not yet know whether false statements were made or the law was violated. (ER 65.) And it has made no attempt to explain why it needs Doe's identity to prove falsity or truth. Like *LaRouche*, this Court should refuse access to protected information before the agency submits evidence tying that information to law-breaking activity.

The SEC claims that *EEOC v. University of Notre Dame Du Lac*, 715 F.2d. 331 (7th Cir. 1983) is inapposite because it "is not a First Amendment case and is based on a premise – that a peer review privilege exists – later rejected by the Supreme Court." *Id.* But Doe relied on *EEOC* not to prove that peer review is protected, but rather to demonstrate that an administrative agency must be able to prove—with more than speculation—that it has a particularized need for protected information before it fishes in protected areas. Those principles remain good law.

Similarly, the SEC's lengthy footnote purportedly distinguishing *Brock* fails. (Response at 14 n.4) The SEC claims *Brock* does not stand for the proposition that more than a blanket statement that an agency is investigating possible legal violations is required to demonstrate a compelling governmental interest. But the *Brock* Court remanded for fact-finding regarding whether a first amendment right was at issue, and if so, whether "the government can demonstrate that the information sought through the subpoenas is rationally related to a compelling governmental interest." *Brock*, 860 F.2d at 350. The SEC's argument that only a pro-forma statement was necessary to prove a compelling governmental statement is mistaken. The *Brock* court knew the Secretary of Labor was investigating

potential wrongdoing, and there would have been no need for a fact-finding remand if simply alleging an investigation was all the proof required.

The SEC's attempt to distinguish Doe's authority by claiming that "the cases relied on by the Does involve civil discovery, which courts oversee" is confusing. (Response at 21.)[2] The SEC does not identify which cases it believes involve civil discovery, and Doe does not rely on any. Doe relies primarily on *Brock*, *Comley*, *LaRouche*, *Notre Dame,* and *Gibson*—each of which involves administrative or legislative subpoenas issued without any judicial review.

## C. Doe's proposed rule strikes the appropriate balance between the government's need to investigate and civil rights.

Doe proposes that this Court adopt a rule requiring evidence that demonstrates a substantial possibility that a violation of law occurred. Opening Br. at 16-17. The SEC must also prove that Doe's identity is necessary to the investigation of that violation. *Id.* This rule is far more relaxed than the formula that this Court approved for civil discovery between private parties in *Anonymous Online Speakers*. In that case, the Court required that a party seeking an anonymous online identity present enough undisputed facts that a reasonable jury could not conclude otherwise—proof sufficient to overcome a hypothetical summary judgment motion. *Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online Speakers)*, 661 F.3d 1168 (9th Cir. 2011).

The SEC argues that "government investigations of all kinds would be thwarted" by requiring evidence of wrongdoing before intruding into

---

[2] The SEC may be confusing *amicus* argument with Doe's brief.

constitutionally protected areas because "staff would rarely be in the position at the early stages of their inquiries to establish the violations they are investigating." (Response, at 20.) The SEC misses the point. The SEC should not be randomly inquiring into protected areas in the early stages of an investigation. There is no compelling governmental interest in fishing.

As this investigation demonstrates, the SEC does not need Doe's identity in the early stages of its investigation. The SEC had access to the possibly unlawful communications. As the SEC admits, it was investigating whether the statements were "false and misleading". (Response at 4.) It could have waited to investigate the statements and presented them and the evidence showing that they were false—if they were false. Doe's identity has nothing to do with the gravamen of the offense, and the SEC presents no reason why it could not have waited to seek Doe's identity if it can show the substantial possibility of a legal violation.

Similarly, the SEC's argument that public disclosure of investigative materials as part of judicial review would hamper its investigation is a red herring. (Response at 20.) The SEC publicly filed its Investigative Order, meaning that any malfeasants had notice of the investigation. And the SEC could have submitted further evidence under seal, under a protective order, or in camera, if the agency were truly concerned about disclosure.

## D. The SEC provided insufficient evidence to justify an intrusion into Doe's first-amendment rights.

The SEC argues that it provided sufficient evidence justifying its intrusion. But even if this Court does not adopt Doe's proposed test that the SEC must prove a substantial possibility that a legal violation occurred, the SEC presented insufficient evidence under any formulation of *Brock's*

compelling governmental-interest requirement. The SEC's evidence is nothing more than speculation.

The SEC asserted it was investigating a pump-and-dump scheme where false statements might have been made about a stock. But the SEC admits that it had not discovered whether a pump-and-dump scheme actually operated. In truth, it has not yet investigated whether any false or misleading statements were made. Absent such proof, the SEC was only seeking the identity of a person who made protected comments on the Internet, and not a pump-and-dump scheme perpetrator.

The sum total of the SEC's evidence was that the Jammin Java stock rose and fell, undisclosed communications were made about the stock, and the SEC claimed that the company was a "shell". Some of the SEC's conclusions about Jammin Java were demonstrably false. The SEC's declaration claimed that the Jammin Java corporation was a "shell company". But the evidence submitted in support of the conclusion—Jammin Java's SEC reports—demonstrated that Jammin Java was a startup that acquired a valuable intellectual property right—the Bob Marley family name—and made significant investments in marketing and staff as part of a business plan to market specialty coffee.[3] And there is nothing illegal about disseminating information about a stock if that information is true.

The SEC argues that it presented sufficient evidence because it presented a declaration from a government employee, and such declarations "are generally accorded a presumption of good faith until some evidence is presented to support a contention of a lack of good faith." (Response, at 25),

---

[3] Jammin Java subsequently realized its plans, and currently produces and sells coffee. *see* http://www.jamminjavacoffee.com/.

11

citing *Fortney v. United States*, 59 F.3d 117, 121 (9th Cir. 1995). This argument misses the point. It is not the fact that evidence was presented in a declaration and attachments but rather the sufficiency of that evidence that Doe challenges.

If the SEC is arguing that the Court should defer to the agency's subjective belief that the SEC had sufficient evidence to proceed, then the Court should respectfully decline. Such deference may be appropriate where constitutional protections are not involved (as in *Fortney v. United States*, 59 F.3d 117), but the Supreme Court and every circuit to consider the issue has rejected this argument where a constitutional right is at issue. Granting this level of deference to the SEC writes *Brock*, *Gibson, LaRouche*, and *Comley* out of existence and allows the SEC to intrude into a protected area using the minimum requirements necessary for any subpoena.

Finally, the SEC's claim that evidence presented during argument to the Magistrate bolsters its claim fails. The "evidence" presented was nothing more than a summary of the evidence in the declarations, and no new material fact was alleged. Further, it was presented during argument, not under oath, and not subject to cross-examination. (Response at 16, citing ER 262, Tr. at 13:9-19.)

### E. The burden is on the SEC, not the District Court, to create a record supporting its intrusion.

The SEC suggests that it met its burden to produce evidence supporting its assertions by offering to produce further evidence if the district court desired. (Response at 16 n.6.) But it is the SEC, and not the district court, that must produce evidence. *See Brock*, 860 F.2d at 350. The SEC had numerous opportunities to present evidence and declined. It may

not now claim that it is entitled to rely on hypothetical evidence never presented to or reviewed by any court.

**F.     This Court should order exclusion of evidence as a remedy.**

The SEC asks for a holding that a court may never order exclusion of evidence for a first amendment violation. (Response at 26-29.) But this relief would require overturning over 30 years of jurisprudence.

The exclusionary rule protects the rights of the innocent by preventing government from using illegally obtained evidence, thereby deterring future illegal collection. *Davis v. United States,* 131 S. Ct. 2419, 2432 (2011). The exclusionary rule is "designed to protect core constitutional values" and should be "employed when those values are implicated." *United States v. Alvarado-Torres*, 45 F. Supp. 2d 986, 994 (S.D. Cal. 1999).

In *FTC v. Gibson Products of San Antonio, Inc.*, 569 F.2d 900, 903 (5th Cir. 1978), the Fifth Circuit found that a challenge to an FTC subpoena was not moot because the documents could be returned and their use forbade at an evidentiary hearing. This is the only remedy that has any meaning for Doe. Returning the documents showing Doe's identity is meaningless: the SEC sought only Doe's identity and the return of documents without precluding their use provides no remedy at all.

The SEC admits that exclusion is appropriate in administrative proceedings and for fourth, fifth, and sixth amendment violations, and proffers only a Western District of Pennsylvania decision holding that it could not extend to the first amendment. (Response, at 27.) While first-amendment violations occur less frequently than search-and-seizure issues in government investigations, there is no principled reason to exclude the first amendment. As demonstrated here, government agencies like the SEC

invade core constitutional protections regularly, and deterring future similar misconduct requires more than requiring the SEC to return meaningless documents but allowing the retention of the sole piece of information the SEC sought.

The SEC claims that the exclusionary rule should not apply because it had a good-faith basis to believe its actions were lawful. The SEC relies on *United States v. Leon,* 468 U.S. 897 (1984) and *Illinois v. Krull,* 480 U.S. 340, 349-350 (1987)(Response at 27-28.) But in *Leon,* law enforcement relied on a search warrant that was only invalidated after the search, and in *Krull*, law enforcement relied on a statute that was later declared unconstitutional. *Brock* is settled law, and the SEC can cite no authority allowing it to invade protected areas on speculation alone. Further, the SEC did not use good faith in executing its subpoena. The SEC did not notify Doe of the subpoena and appears to have a policy against notifying subpoena targets, perhaps hoping to fly under the radar and evade judicial review.

This Court has the authority to preclude the SEC from using illegally obtained information. In this case, there is no other effective remedy for Doe, and no other effective way to deter the SEC from unlawfully invading privacy in the future. This is a widespread issue with broad implications for freedom of expression. As the Supreme Court recognizes, the Internet has created a soapbox the founding fathers could only have dreamed of. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). The extent of government supervision of our anonymous email expression is unknown: neither the SEC nor any other government agency is required to disclose that it is seeking an anonymous identity. Only through the good citizenship of Google did Doe discover the subpoena. There is no method for determining how many Internet service

14

providers are less civic-minded than Google, or how many subpoena subjects have the means and will to challenge the SEC. But as the SEC admits, it regularly investigates the mere possibility of wrongdoing—including delving into protected areas and discovering the anonymous identities of citizens criticizing government. If a rights-protecting line is to be drawn, it must be drawn with more than a pittance as a penalty for violating it.

### III.   CONCLUSION

The SEC asks this Court to simply trust its declaration and believe that there is a valid reason for its subpoena. But the Constitution mandates judicial review where a first amendment right is implicated, and the SEC must present a compelling governmental interest before trampling on Doe's rights. That compelling government interest is not the fact of investigation itself. Otherwise, the SEC would have a blanket license to invade first-amendment rights. Rather, the SEC must show a compelling interest in the protected area.

In this case, the SEC presented only speculation and conclusion. The SEC did not present evidence indicating that Doe's identity would aid the investigation. The Court should find that the subpoena was invalid and return Doe to the position he was in before the SEC unlawfully obtained his identity. The Court should remand with instructions to quash the subpoena and exclude evidence generated by it in any proceeding.

DATED this 18th day of May, 2012.

NEWMAN DU WORS LLP

By:    s/ Keith Scully
       Keith Scully, WSBA # 28677
       Derek Newman WSBA # 26967
       1201 Third Avenue, Suite 1600
       Seattle, Washington 98104
       Telephone:  (206) 274-2800
       Facsimile:    (206) 274-2801

       Attorney for Appellant John Doe

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed.R.App. 32(a)(7)(C) and Circuit Rule 32-1

for Case No. 11-35592

I CERTIFY THAT:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached brief is proportionately spaced, has a typeface of 14 points or more and contains 4,120 words.

DATED this 18th day of May, 2012.

NEWMAN DU WORS LLP

By:     s/Keith Scully
        Keith Scully
        Derek Newman
        1201 Third Avenue, Suite 1600
        Seattle, Washington 98104
        Telephone:  (206) 274-2800
        Facsimile:   (206) 274-2801

        Attorney for Appellant John Doe